UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-cv-00335-RJC-DCK

| | |
|---|---|
| FRIEDLAM PARTNERS, LLC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| LERNER AND COMPANY REAL ) | |
| ESTATE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, (Doc. No. 7), the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 29), Defendants' Objection to the M&R, (Doc. No. 30), and other documents of record. For the reasons explained below, the M&R is **ADOPTED in part** and **REJECTED in part**, and the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

Plaintiff and Defendants entered into a "Purchase and Sale Agreement," (Doc. No. 1-1), on or about February 15, 2022, wherein Defendants agreed to sell ten multi-family properties to Plaintiff for a purchase price of $198,500,000.00. (Doc. No. 1 at 5). The parties' agreement required Plaintiff to make two initial payments of $1,000,000.000 – bringing the total earnest money deposit to a total of $2,000,000. (*Id.*). Plaintiff placed $1,000,000 of the purchase price into escrow upon the contract's

1

execution and an additional $1,000,000 upon the inspection period's expiration on April 15, 2022. (*Id.*; Doc. No. 8 at 4).

Paragraph 3.1 of the parties' agreement provided Plaintiff with the opportunity to perform due diligence on each of the properties. Specifically, Plaintiff had the right (until the closing date) to enter onto the various properties to conduct a variety of inspections, including environmental testing. (Doc. No. 1-1 at 4–5; Doc. No. 1 at 5–6). If an inspection revealed the existence of a "Material Adverse Condition," Plaintiff had the right to terminate the contract and to receive a refund of its earnest money, subject to the contract's terms. (Doc. No. 1 at 6). The contract defines "Material Adverse Condition" as:

> either (x) a recommendation in a Phase I environmental site assessment (by a qualified environmental professional (the "QEP")) to conduct a Phase II environmental site assessment or other further testing, which further testing reveals the existence of environmental matters or conditions that require more than $50,000 to cure or remediate, in the reasonable estimate of the QEP (provided, further, that in the event that such further testing is recommended, the deadline for Purchaser to deliver a Termination Notice based on a Material Adverse Condition reflected in such further testing shall be automatically extended for a reasonable time until the results of such further testing are received by Purchaser and, provided, further, that Purchaser shall not be required to conduct such further testing if such further testing itself would cost in excess of $50,000.00 to conduct and such recommended additional testing will be considered a Material Adverse Condition unless Seller agrees to pay the cost in excess of $50,000.00), or (y) other findings which reveal the existence of environmental matters or conditions which would require more than $50,000.00 to cure or remediate, in the reasonable estimate of the QEP.

(Doc. No. 1-1 at 4).

Plaintiff retained BBG Assessments to conduct a Phase I Environmental Site Assessment for the Lake Hill Apartments site. (Doc. No. 1 at 7). BBG identified a 17.5

2

acre "Brownfields property" extending along the northwest boundary of the Lake Hill Apartments property. (*Id.*). Accordingly, in its Phase I Report, BBG recommended a limited sub-surface assessment of the property. (*Id.*). The site assessment revealed that multiple drycleaners and gas stations utilized the adjacent property and that the "release of dry-cleaning chemicals and above ground and underground storage tanks have created a plume impacting the groundwater under adjacent properties impacting the subject properties including the Lake Hill property." (*Id.*). BBG's Phase II Report found that the Lake Hill Apartments property had "been impacted by contamination from gas station and dry-cleaning operations and found that the property had been impacted by hazardous chemicals." (*Id.* at 9). In light of the Phase II Report's findings, Plaintiff exercised its option to terminate under Paragraph 3.1 of the parties' agreement for the presence of a "Material Adverse Condition" and requested return of its earnest money. (*Id.* at 10). Defendants refused to return the earnest money. (*Id.*).

Plaintiff claims that "[a]dditional testing as well as remediation and cleanup of such plume and related environmental matters or impacts on the property, would cost well over $50,000.00, and thus, Plaintiff is entitled to return of its Earnest Money." (*Id.* at 8). Plaintiff further claims that Defendants "were aware or should have been on notice of environmental issues and impacts on the subject properties because a 'Notice of Brownfields' [was] filed with the Mecklenburg County Register of Deeds on March 19, 2007, related to the subject properties and property adjacent the subject properties." (*Id.*). In support of his claim, Plaintiff points to Defendants'

3

acknowledged receipt of the Notice of Brownfields Agreement concerning the Lake Hill Apartment property; Harry Lerner, as President of Lake Hills Corporation, executed the agreement. (*Id.*).

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id*. Likewise, merely reiterating the same arguments made in the pleadings or motion submitted to the Magistrate Judge does not warrant de novo review. *Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 747 (W.D.N.C. 2011), *aff'd sub nom.*, *Durkee v. Geologic Sols., Inc.*, 502 F. App'x 326 (4th Cir. 2013).

"A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint

4

attacked under Rule 12(b)(6) will survive if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary, and the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration omitted). Additionally, when ruling on a motion to dismiss, a court must "view the complaint in a light most favorable to the plaintiff," *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), accept the complaint's factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and refrain from weighing the facts or assessing the evidence. *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014). Nonetheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and though the Court views the facts in the light most favorable to the plaintiff, a complaint tendering "naked assertions devoid of further factual enhancement" cannot proceed. *Iqbal*, 556 U.S. at 678.

5

## III. DISCUSSION

Defendants object to the M&R on grounds that: (1) to state a claim for breach of contract under the parties' agreement, Plaintiff must allege facts sufficient to show that a "Material Adverse Condition" existed on the subject properties entitling Plaintiff to the return of the escrowed funds; (2) the M&R erred in its holding that Plaintiff adequately alleged aggravating factors in addition to the purported contract breach to support a UDTPA claim; and (3) the M&R erred by failing to enforce the parties' negotiated limitation on liability clauses in the contract. (Doc. No. 30 at 1–4).

### A. Plaintiff's Breach of Contract Claim

Plaintiff alleges that "defendants have breached the Agreement by failing to return Plaintiff's Earnest Money deposit" after the Phase II report showed what Plaintiff claims to be a "Material Adverse Condition." (Doc. No. 1 at 11). The M&R noted that this issue presented a close call and concluded that "the parties be directed to conduct at least some initial discovery, and that Plaintiff then be allowed to file an Amended Complaint." (Doc. No. 29 at 28).

Defendants now object that "[t]he M&R erred by denying Defendants' Motion as it relates to Plaintiff's breach of contract claim after correctly finding that Plaintiff's Complaint contained 'apparent deficiencies' in its allegations." (Doc. No. 30 at 11). Defendants argue that "[r]ather than require the parties to engage in expensive discovery before Plaintiff must amend its Complaint, the Court should dismiss Plaintiff's breach of contract claim without prejudice and require Plaintiff to specifically allege the existence of a Material Adverse Condition (*i.e.*, that the QEP

6

provided a reasonable estimate that the cost of remediation would exceed $50,000 before Plaintiff sought the return of the Earnest Money)." (*Id.*). Defendants claim that "Plaintiff, and Plaintiff alone, already has all information necessary to know whether or not it can make that allegation in good faith." (*Id.*).

Defendants assert that the contract's language is clear and that "a Material Adverse Condition exists only when 'in the reasonable estimate of the QEP,' it would cost more than $50,000 to cure or remediate the property." (*Id.*). Defendants argue that Plaintiff has "no basis to assert the existence of a Material Adverse Condition on the property" without a remediation estimate of the QEP stating that it would cost more than $50,000.00 to cure the environmental issues. (*Id.*). Defendants claim that Plaintiff attempts to use the actual cost to remediate the environmental condition as the basis for the presence of a Material Adverse Condition when the actual cost does not control. (*Id.* at 12). Defendants maintain that Plaintiff "did not plead that the QEP had provided an estimate that the remediation would cost more than $50,000" because "no such estimate exists in the Phase II Report." (*Id.* at 14). Defendants clarify that "additional discovery would not be helpful on this specific point" because "only plaintiff would know whether such an estimate was provided or not." (*Id.* at 13).

On the other hand, Plaintiff argues that it "has adequately alleged a Material Adverse condition impacting the property allowing the return of its earnest money." (Doc. No. 31 at 3). Plaintiff claims that Defendants attempt to provide a self-serving interpretation of Paragraph 3.1 by reading additional requirements into the

7

contract. (*Id.* at 1–3). Plaintiff claims that the contract does not include any "specific contractual provision regarding the procedure for any third-party to submit any estimate to Defendants and indeed the Phase II Report was to assess the objective environmental condition of the property." (Doc. No. 23 at 8). Plaintiff further notes that "Defendants do not even contest that objectively the cost to remediate the plume of drycleaning and petroleum constituent compounds, would cost in excess of $50,000." (Doc. No. 31 at 4). Plaintiff contends that because there is ambiguity surrounding the contract's terms, interpretation of the contract is a matter for the jury. (Doc. No. 23 at 8) (citing *Harper v. Vohra Wound Physicians of NY, PLLC*, 841 S.E.2d 580,584 (N.C. Ct. App. 2020)).

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." *Highland Paving Co. v. First Bank* 742 S.E.2d 287, 291 (N.C. App. Ct. 2013) (citations omitted). Plaintiff bears the burden of demonstrating that it has "state[d] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court finds that Plaintiff has failed to state a claim for breach of contract against Defendants. Paragraph 3.1 of the parties' agreement states:

> As used herein, a "Material Adverse Condition" means either (x) a recommendation in a Phase I environmental site assessment (by a qualified environmental professional (the "QEP")) to conduct a Phase II environmental site assessment or other further testing, which further testing reveals the existence of environmental matters or conditions that require more than $50,000 to cure or remediate, in the reasonable estimate of the QEP
> 
> . . .

8

> or (y) other findings which reveal the existence of environmental matters or conditions which would require more than $50,000.00 to cure or remediate, in the estimate of the QEP.

(Doc. No. 1-1 at 4).

The contract's language is clear: To plead the existence of a Material Adverse Condition, there must be some reasonable estimate of the QEP indicating that the conditions require more than $50,000 to cure or remediate. While there may remain some question as to how the estimate of the QEP is to be shown, to state a plausible claim, Plaintiff must plead the existence of a Material Adverse Condition as defined by the parties' agreement. The Court finds this deficiency in Plaintiff's pleading fatal to his breach of contract claim as presently alleged. Accordingly, the Court will grant Defendants' motion as to Plaintiff's breach of contract claim without prejudice and allow Plaintiff an opportunity to amend his Complaint to address the deficiencies identified by the M&R and this Order.

**B. Plaintiff's Unfair and Deceptive Trade Practices Act Claim**

Defendants object that "[t]he M&R erred in concluding that Plaintiff had plausibly alleged facts to state a UDTPA claim." (Doc. No. 30 at 15). Defendants argue that "Plaintiff's UDTPA claim is nothing more than a repackaging of its breach of contract claim, which seeks to impose tort damages into a contractual dispute." (*Id.*). Defendants claim that "the only aggravating factor identified in Plaintiff's Complaint and cited in the M&R is a reference to the Acknowledgement, which concerns a property that was not part of the transaction between Plaintiff and Defendant at all." (*Id.*). Defendants claim that Plaintiff fails to allege the existence of an unfair or

9

deceptive act as is required to support its UDTPA claim under North Carolina law. In Defendants' view, Plaintiff's UDTPA claim is "premised on Defendants' failure to release the escrowed funds." (*Id.* at 16).

But Plaintiff contends that "Defendants had notice of a contamination through a letter sent to them regarding a Notice of Brownfields Agreement." (Doc. No. 23 at 13). And Plaintiff argues that despite Defendants' knowledge of the contamination, Defendants affirmatively represented to Plaintiff that "to Defendants' 'knowledge, there are no Hazardous Materials on, in, under or emanating from the Properties, except as disclosed in writing to Purchaser prior to the Effective Date." (Doc. No. 1 at 6). Plaintiff accuses Defendants of being "engaged in a scheme to withhold Plaintiff's earnest money." (Doc. No. 1 at 10).

The M&R found that Plaintiff alleged facts sufficient to state a plausible UDTPA claim. (Doc. No. 29 at 23). First, the M&R found that Plaintiff alleged that Defendants engaged in an unfair or deceptive act by knowingly withholding information about hazardous materials on the property in question to induce Plaintiff to enter into the contract. (*Id.* at 20 (citing Doc. No. 1 at 6–7)). The M&R notes that "[s]trikingly, Defendants do not seem to deny that they were aware of the contamination at the property in question, or that they knowingly withheld that information from Plaintiff." (Doc. No. 29 at 21).

Second, the M&R found that Plaintiff adequately alleged that the action in question was in or affecting commerce. (*Id.*). The M&R reasoned that the "case involves parties who own, develop, and/or manage, multi-family residential

10

properties and were engaged in a transaction whereby Plaintiff would acquire ten (10) multi-family properties from Defendants for $198,500,000.00." (*Id.* at 22 (citing Doc. No. 1 at 2–5)). Third, the M&R found that Plaintiff adequately alleged that Defendants' actions have proximately caused injury. (*Id.* at 22). The Magistrate Judge reasoned that "[i]n short, Defendants allegedly fraudulently induced Plaintiff into the Contract and have since improperly withheld the return of $2,000,000.00 in Earnest Money." (*Id.*).

"Where a plaintiff raises a UDTPA claim based on a breach of contract, the plaintiff must allege substantial aggravating circumstances in addition to the breach of contract, because a mere breach of contract is not sufficiently unfair or deceptive." *Graves v. Wells Fargo Bank, N.A.*, No. 1:14-CV-398, 2014 U.S. Dist. LEXIS 200405, at *8 n.9 (M.D.N.C. Nov. 19, 2014) (citing *Hardin v. York Mem'l Park*, 221 N.C. App. 317; 730 S.E.2d 768, 777 (2012)). "But where a plaintiff's UDTPA claim rests on extra-contractual behavior, the claim should not be dismissed merely because the behavior does not also constitute a breach of contract." *Id.* (citing *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (listing the elements of a prima facie claim for unfair trade practices as not requiring a breach of contract); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 61, 620 S.E.2d 222, 231 (2005) ("Unfair and deceptive trade practices . . . claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions."); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992) ("[N.C. Gen. Stat. § 75-1.1] was created to provide

11

an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of contract, or breach of warranty. The result was a broader cause of action with broader remedies.")).

As the M&R notes, in support of its UDTPA claim, Plaintiff relies on two cases from the North Carolina Court of Appeals that found there may be violations of N.C. Gen Stat. 75-1.1, along with breach of contract, where there were sufficiently aggravating circumstances. (Doc. No. 29 at 19) (citing *Garlock v. Henson*, 112 N.C. App. 243, 246 (1993) and *Foley v. L & L Int'l*, 88 N.C. App. 710, 714 (1988)). Accordingly, the M&R proceeded to analyze whether Plaintiff's UDTPA claim is duplicative of its breach of contract claim. (*Id.* at 20). In recommending that Defendants' motion be denied as to Plaintiff's UDTPA claim, the M&R relied on *Aseltine v. Bank of America*:

> While the UDTPA does not apply "to an individual who merely breaches a contract." *Bumpers v. Cmty. Bank of N. Virginia*, 367 N.C. 81, 87–88 (2013), "[a] plaintiff may bring a UDTPA claim where a defendant's breach of contract involved deception and egregious and aggravating circumstances." *Viza Elecs., LLC v. Paradigm Clinical Rsch. Inst., Inc.*, No. 3:22-CV-49-MOC-DCK, 2022 WL 4459836, at *6 (W.D.N.C. Sept. 23, 2022) (citing *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002)) (additional citations omitted). A breaching party commits an egregious or aggravated breach when it acts deceptively "in the circumstances of [the contract's] breach" such as the formation of the contract ….

(Doc. No. 29 at 22–23 (citing *Aseltine v. Bank of America*, 3:23-CV-235-MOC-WCM, 2023 WL 6305809 (W.D.N.C. Sept. 27, 2023))).

The Court observes that at this stage, Plaintiff's UDTPA claim appears to be premised on its breach of contract claim. Thus, the Court will grant Defendants' motion without prejudice as to Plaintiff's UDTPA claim.

12

## C. Plaintiff's Claims Against the Individual Defendants

Defendants object to the M&R on grounds that it "fail[ed] to dismiss all claims against the Individual Defendants because the parties expressly waived such liability in the express language of the Contract." (Doc. No. 30 at 19). Specifically, Defendants claim that "the M&R erred by failing to dismiss Plaintiff's UDTPA and Misrepresentation Claims against all Defendants other than Lerner and Company Real Estate—the only Defendant that made **any** representations concerning the Lake Hill Apartments site. (*Id.* (emphasis in original)).

Defendants claim that the plain language of the parties' agreement "waives liability for the Individual Defendants," (Doc. No. 30 at 19), and that the agreement's plain language "makes clear that only Lerner and Company Real Estate made any representations concerning the Lake Hill Apartments leasing office, thus limiting any liability for Plaintiff's UDTPA and Misrepresentation Claims to Lerner and Company Real Estate." (*Id.* at 20). To the extent that Defendants restate arguments already presented to the Magistrate Judge or assert that the M&R fails to sufficiently acknowledge those arguments, de novo review is not required. *Orpiano*, 687 F.2d at 47. Nevertheless, having reviewed the record and the parties' arguments, the Court finds that the recommendation of the Magistrate Judge should be adopted.

The Magistrate Judge found that, with respect to Plaintiff's misrepresentation claims, "Plaintiff has pled sufficient 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (Doc. No. 29 at 13). The Magistrate Judge further determined that the purported liability

13

limitations in the parties' agreement should not be construed at this stage of the litigation to preclude Plaintiff's misrepresentation claims." (*Id.* at 12–13). The Magistrate Judge found *Ada Liss Group v. Sara Lee Corp.*, 2010 WL 3910433 (M.D.N.C. 2010) instructive:

> The case law in North Carolina supports only the more limited proposition that exculpatory clauses eliminating liability for *ordinary negligence,* though strictly construed and disfavored, are enforceable under certain circumstances. . . .
>
> There is absolutely no case law in North Carolina, on either the state or federal level, supporting the enforcement of exculpatory clauses for intentional wrongdoing. …the Restatement of Contracts clearly states that "[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."

(Doc. No. 29 at 14 (citing *Ada Liss Group*, 2010 WL 3910433, at *9).

The Court agrees that it would be premature to dismiss the misrepresentation claims against Defendants based on the purported liability limitations in the parties' agreement. The Magistrate Judge noted, however, that with respect to Plaintiff's claims against individual Defendants, "[i]t will likely be helpful to the ultimate resolution of this case for the parties to discover who knew what, and when, regarding hazardous materials on the properties, and what, if any, of that information was shared with Plaintiff before or during the Contract's negotiation and execution." (Doc. No. 29 at 17). The Magistrate Judge further noted that Plaintiff suggests that it "has additional detail it could have provided, and is willing and able to amend the Complaint." (*Id.* at 16 n.3). Accordingly, the Court adopts the M&R's recommendation

to deny Defendants' motion with respect to Plaintiff's misrepresentation claims without prejudice and will allow Plaintiff an opportunity to amend his complaint.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. The Magistrate Judge's M&R, (Document No. 29), is **ADOPTED in part** and **REJECTED in part**; and

2. Defendants' Motion to Dismiss, (Document No. 7), is **GRANTED in part** and **DENIED in part**;

3. Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** as to Plaintiff's breach of contract and UDTPA claims and **DENIED WITHOUT PREJUDICE** as to Plaintiff's misrepresentation claims;

4. **Plaintiff may file an amended complaint no later than 30 days from the date of this Order**.

Signed: September 30, 2024

Robert J. Conrad, Jr.
United States District Judge