IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00335-KDB-DCK

| FRIEDLAM PARTNERS, LLC, | |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| LERNER AND COMPANY REAL ESTATE, ET AL., | |
| Defendants. | |

**THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss (Doc. No. 59) Plaintiff's breach of contract, North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and unjust enrichment claims arising from a "Purchase and Sale Agreement" concerning the proposed sale of ten multi-family properties for nearly two hundred million dollars. The Court has carefully considered this motion and the Parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion.

I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court,

1

however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Further, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

On February 15, 2022, the Plaintiff and Defendants executed a Purchase and Sale Agreement (the "Agreement") under which Defendants agreed to sell to Plaintiff ten multi-family properties for $198,500,000. Doc. No. 56 ¶¶ 24–25. The Agreement and its later Amendment

required Plaintiff to deposit $2,000,000 in earnest money, consisting of two $1,000,000 payments—one at execution and one prior to initiation of a Phase II Site Assessment. *Id.* ¶ 26.

Under Paragraph 3.1 of the Agreement, Plaintiff was granted the right to conduct due diligence, including environmental inspections, and was permitted to terminate the Agreement and recover its earnest money if a "Material Adverse Condition" was identified. *Id.* ¶¶ 28–30. The contract defined such a condition to include (1) a Phase I recommendation for Phase II or other testing that reveals environmental conditions requiring more than $50,000 to remediate, or (2) any other environmental finding reasonably estimated by a qualified environmental professional ("QEP") to require remediation costs exceeding $50,000. *Id.* ¶ 28.

Plaintiff retained BBG Assessments ("BBG") to conduct the Phase I Environmental Site Assessment ("Phase I Assessment") for the Lake Hill Apartments property (the "Lake Hill property"). *Id.* ¶ 33. In its report dated March 24, 2022, BBG identified an adjacent 17.5-acre Brownfields site adjacent to the Lake Hill property, recommended subsurface testing and noted that the adjacent property was included in several environmental regulatory databases. *Id.* ¶¶ 33–35. The Phase I Assessment also revealed the adjacent property had contamination from dry-cleaning chemicals and fuel storage tanks, including a groundwater plume affecting the Lake Hill property. *Id.* ¶¶ 36–40. Plaintiff asserts that Defendants knew or should have known of the environmental issues deriving from the adjacent property and onto the Lake Hill property, citing a 2006 Notice of Brownfields recorded with the Mecklenburg County Register of Deeds and signed by Defendant Harry Lerner on behalf of Lake Hills Corporation. *Id.* ¶¶ 43–45.

On May 4, 2022, BBG issued a Phase II Limited Environmental Site Assessment ("Phase II Assessment") for the Lake Hill property, concluding that it had been impacted by hazardous substances associated with historic gas station and dry-cleaning operations on the adjacent

3

property. *Id.* ¶¶ 52–55. Detected contaminants included benzene, tetrachloroethylene ("PCE"), ethylbenzene, trichloroethylene, naphthalene, and xylenes—hazardous substances recognized under federal and state law and commonly associated with vapor intrusion. *Id.* ¶¶ 52–53. The Phase II Assessment further found benzene, naphthalene, and PCE in groundwater; benzene, naphthalene, ethylbenzene, toluene, and xylenes in sub-slab soil vapor; and PCE in indoor air. *Id.* ¶ 52. Several of these carcinogenic chemicals, including benzene, naphthalene, and PCE, were present at concentrations exceeding screening levels established by the North Carolina Department of Environmental Quality. *Id.* ¶ 54.

Between May 5 and 11, 2022, Plaintiff communicated with Matthew McGovern, the engineer and QEP at Arbor Realty Trust—Plaintiff's lender—who estimated that remediation of the contamination would exceed $50,000. *Id.* ¶¶ 57–58. Relying on these findings, Plaintiff exercised its right to terminate the Agreement pursuant to Paragraph 3.1 of the contract and issued to Defendants a Notice of Termination and requested the return of its earnest money.[1] *Id.* ¶ 61. Defendants refused. Plaintiff then filed this action in July 2022, asserting claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation, and unfair and deceptive trade practices. Doc. No. 1 at 10-13. Defendants moved to dismiss, and after the Magistrate Judge issued a Memorandum and Recommendation ("M&R")—adopted in part by the Court—the Court dismissed without prejudice Plaintiff's breach of contract and unfair and deceptive trade practices claims. *See* Doc. No. 35.

---

[1] *See* Doc. No. 56-1 at 4 ("Purchaser may elect to terminate this Agreement by delivering written notice (a 'Termination Notice') to Seller … in which event the Earnest Money shall immediately be released to Purchaser unless such termination is due to a … Material Adverse Condition.").

Plaintiff subsequently filed a Second Amended Complaint, and Defendants again move to dismiss the breach of contract and unfair and deceptive trade practices claims, as well as a newly asserted unjust enrichment claim. *See* Doc. No. 60. This case was reassigned to the undersigned on February 25, 2026. The Motion is fully briefed and ripe for this Court's review.

### III. DISCUSSION

A. <u>Breach of Contract</u>

In Defendants' first motion to dismiss, the Court dismissed Plaintiff's breach of contract claim without prejudice, explaining that Plaintiff failed to plausibly allege a breach of contract where it alleged the existence of a Material Adverse Condition but failed to also allege that a "reasonable estimate of the QEP indicat[es] that the conditions require more than $50,000 to cure or remediate," as required by the contract. Doc. No. 35 at 9.

In North Carolina, the elements of a claim for breach of contract are "(1) existence of a valid contract and (2) breach of the terms of [the] contract." *Drake v. CommScope Techs., LLC*, No. 5:24-CV-00233-KDB-DCK, 2025 WL 2814642, at *2 (W.D.N.C. Sept. 30, 2025) (quoting *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (2019)).

Plaintiff's Second Amended Complaint cures its earlier pleading deficiency by alleging that a QEP, albeit a different QEP from the one that conducted the Phase I and II Assessments, estimated that remediation of the identified contamination would exceed $50,000. Still, Defendants seek dismissal, arguing, among other things, that the contractual phrase "the QEP" requires that the same QEP who performed the Phase I and II Assessments must also provide the remediation estimate.

Section 3.1 of the Agreement defines a "Material Adverse Condition" as either:

(x) a recommendation in a Phase I environmental site assessment (by a qualified environmental professional (the "QEP")) to conduct a Phase II environmental site

5

assessment or other further testing, which further testing reveals the existence of environmental matters or conditions that require more than $50,000 to cure or remediate, in the reasonable estimate of the QEP, … or (y) other findings which reveal the existence of environmental matters or conditions which would require more than $50,000 to cure or remediate, in the reasonable estimate of the QEP.

Doc. No. 56-1 at 4.

Defendants in essence contend that once Plaintiff selects a QEP, no other QEP may participate in the assessment or remediation-estimation process. The Court finds that interpretation untenable. Nothing in the Agreement states that the same QEP must perform all tasks from initial assessment through remediation estimation. Moreover, Defendants' reading could lead to impractical and potentially absurd results. For example, a second QEP might be necessary in the event of the dissolution of the first QEP's business, the death or unavailability of the original QEP, or the termination of the QEP's engagement by Plaintiff for any number of legitimate reasons. That the second QEP is employed by Plaintiff's lender is not a bar to plausibly allege a breach of contract;[2] again, the Agreement contains no language prohibiting Plaintiff from using its lender's QEP for any portion of the assessment process, including the remediation estimate.

Therefore, Plaintiff plausibly alleges that, after Phase I and II Assessments were performed by a QEP, a QEP estimated that remediation of the identified environmental conditions would exceed $50,000. Plaintiff further alleges that it issued a Termination Notice pursuant to Section 3.1 based on the presence of a Material Adverse Condition, and that Defendants breached the Agreement by refusing to return Plaintiff's earnest money. At the motion to dismiss stage, these allegations are sufficient to state a plausible claim for breach of contract. Defendants' motion will therefore be denied as to this claim.

---

[2] To be clear, at this early stage of the case, the Court does not reach any issues related to the ultimate merits of the Parties' claims and defenses, including any bias that may be alleged with respect to any QEP.

B.  Unfair and Deceptive Trade Practices

Defendants next move to dismiss Plaintiff's North Carolina UDTPA claim on the ground that it is "the same claim that this Court has already dismissed." Doc. No. 66 at 15. In ruling on Defendants' first motion to dismiss, the Magistrate Judge recommended denying dismissal because Plaintiff had plausibly alleged that Defendants knowingly withheld information regarding hazardous materials on the Lake Hill property, that the alleged conduct occurred in or affected commerce, and that Plaintiff suffered a proximate injury. Doc. No. 35 at 10–11. The Court nevertheless dismissed the UDTPA claim without prejudice, explaining that the claim was predicated on Plaintiff's breach of contract theory and because the breach of contract claim was not plausibly alleged, the derivative UDTPA claim necessarily failed as well.

The UDTPA prohibits "[u]nfair methods of competition ... and unfair or deceptive acts or practices in or affecting commerce ...." N.C. Gen. Stat. § 75-1.1(a). To state a claim under the statute, a plaintiff must plausibly allege "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately cause[d] actual injury to the plaintiff or to his business." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 522CV00171KDBDCK, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023) (quoting *Harty v. Underhill*, 211 N.C. App. 546, 552 (2011)). *See also Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007).

Here, Defendants do not dispute that their actions were allegedly in or affecting commerce or caused injury to Plaintiff; however, Defendants contend that Plaintiff's claim under the UDTPA fails because such a claim cannot be supported solely by allegations of a breach of contract. To be sure, a mere breach of contract "is not unfair or deceptive, ... absent substantial aggravating circumstances." *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (internal citation

omitted). *See also P'ship of Tennessee,* 284 F.3d at 536 (finding that conduct related to a breach of contract "rarely" violates the UDTPA, and must be "particularly egregious to permit recovery"). However, a sufficient allegation of fraud constitutes a substantial aggravating circumstance in support of a UDTPA claim. *Jones v. Harrelsson & Smith Contractors, LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008), *aff'd*, 363 N.C. 371, 677 S.E.2d 453 (2009) (citations omitted). *See also Boeing Co. v. Ten Oaks Mgmt., LLC,* No. 322CV00481KDBDCK, 2023 WL 4241679, at *8 (W.D.N.C. June 28, 2023) (denying motion to dismiss UDTPA claim where plaintiff had plausibly alleged fraudulent misrepresentation); *Hardy v. Toler*, 288 N.C. 303, 309 (1975) (noting that proof of fraud "would necessarily constitute a violation of the prohibition against unfair and deceptive acts"); *Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) (same).

Therefore, and with the significant caveat that proof of substantial aggravating circumstances through a fraudulent contractual inducement involves far more than mere proof of the falsity of a contractual representation,[3] the absence of any challenge to the fraudulent misrepresentation claim in the Second Amended Complaint warrants allowing the UDTPA claim to proceed based on the earlier ruling with respect to the alleged fraudulent misrepresentation.[4]

---

[3] The elements of fraud under North Carolina law are: (1) "false representation or concealment of a material fact"; (2) "reasonably calculated" and made with intent to deceive; (3) "which does in fact deceive"; (4) proximately resulting in damages. *Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974); *Hernandez v. OPW Fueling Components LLC*, No. 5:25-CV-203-FL, 2025 WL 2396501, at *4 (E.D.N.C. Aug. 18, 2025).

[4] Further, while the alleged misrepresentation was made only with respect to one of the numerous LLC defendants and focused on a 2007 notice (which predated the disputed contract by 15 years) signed by a single individual defendant, the fraudulent misrepresentation claim (again, unchallenged here) was initially permitted to proceed against all defendants. Therefore, the Court will also defer addressing the scope of that claim (as well as its merits) to summary judgment.

C.  Unjust Enrichment

Finally, in the alternative, Plaintiff asserts a claim for unjust enrichment based on Defendants' refusal to return the earnest money after Plaintiff exercised its right to terminate the Agreement.

In North Carolina, a plaintiff may establish a claim for unjust enrichment by showing that he (1) "conferred a benefit on the other party," (2) "not through interference in the other party's affairs," (3) "not gratuitously," and (4) "with measurable value," which (5) the defendant "consciously accepted." *Wilkins v. Consol. Commc'ns Holdings, Inc.*, No. 5:23-CV-655-FL, 2025 WL 818577, at *6 (E.D.N.C. Mar. 14, 2025) (first citing *Krawiec v. Manley*, 370 N.C. 602, 615 (2018); and then citing *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 542 (2013)). It is well established that a plaintiff may plead unjust enrichment in the alternative to a breach of contract claim. *Jessey Sports, LLC v. Intercollegiate Men's Lacrosse Coaches Ass'n, Inc.*, 289 N.C. App. 166, 172 (2023). This approach is consistent with North Carolina's liberal pleading rules, which "permit pleading in the alternative." *Id.* (quoting *Catoe v. Helms Constr. & Concrete Co.*, 91 N.C. App. 492, 498, 372 S.E.2d 331, 335 (1988)).

At the same time, courts routinely dismiss an unjust enrichment claim where the complaint itself establishes the existence of an enforceable contract governing the parties' relationship. *Krieger v. Johnson*, No. 12 CVS 13727, 2014 WL 1759054, at *2 (N.C. Super. Apr. 30, 2014) (citing *Shelter Corp. v. BTU, Inc.,* 154 N.C. App. 321, 330–31, 572 S.E.2d 200 (2002)). *See also McManus v. GMRI, Inc.,* No. 3:12-CV-009-DCK, 2012 WL 2577420, at *9–10 (W.D.N.C. July 3, 2012) (dismissing unjust enrichment claim where plaintiff pleaded an express contract and did not assert unjust enrichment in the alternative). However, when "the applicability or enforceability of the contract is in dispute," a plaintiff may pursue both theories at the pleading stage. *Guerrero v.*

*Bank of Am. N.A.*, No. 321CV00333RJCDSC, 2023 WL 2712484, at *5 (W.D.N.C. Mar. 30, 2023) (citation omitted); *accord Chase Corp. v. Barefoot*, No. 1:24CV351, 2025 WL 641932, at *16 (M.D.N.C. Feb. 27, 2025), *report and recommendation adopted sub nom. Chase Corp. v. Quint Barefoot*, No. 1:24CV351, 2025 WL 969359 (M.D.N.C. Mar. 31, 2025) (declining to dismiss unjust enrichment claim pleaded in the alternative where resolution required consideration of the Agreement's "terms, termination[, and] enforceability").

Here, Plaintiff alleges that it conferred a benefit on Defendants by paying $2 million in earnest money, that the payments were not gratuitous and were made for the purchase of ten multi-family units, and that Defendants consciously accepted and retained the funds after Plaintiff terminated the Agreement due to a Material Adverse Condition. Doc. No. 56 ¶¶ 93–98. Although neither party disputes the existence of a contract, *see* Doc. Nos. 56 ¶¶ 69, 71; 60 at 14, Plaintiff contends that its unjust enrichment claim should proceed because Defendants' alleged misrepresentations may bear on the enforceability of the Agreement or certain of its terms. Doc. No. 63 at 21. Moreover, Plaintiff asserts unjust enrichment solely as an alternative theory should the Agreement ultimately be found invalid or unenforceable. Accordingly, the Court will deny Defendants' motion, without prejudice to further consideration on a more complete record at summary judgment.

## IV. ORDER

NOW THEREFORE IT IS ORDERED THAT:

1. Defendants' Partial Motion to Dismiss (Doc. No. 59) is **DENIED**; and

2. This case shall **proceed to trial on the merits** in the absence of a voluntary resolution of the dispute among the Parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 12, 2026

Kenneth D. Bell
United States District Judge